IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
September 21, 2004 Session

## STATE OF TENNESSEE v. HOWARD LAVELLE TATE

**Appeal from the Criminal Court for Davidson County
No. 2002-B-1018    Steve Dozier, Judge**

_____

**No. M2003-02418-CCA-R3-CD - Filed December 16, 2004**

_____

The Defendant, Howard Lavelle Tate, was pulled over by a Metropolitan Police Officer in Nashville, Tennessee for violating the noise ordinance.  The officer asked the Defendant for consent to search the Defendant's person and the Defendant's vehicle.  The Defendant replied "whatever" to both these requests.  The officer found scales with a white powder residue in the Defendant's vehicle.  The Defendant then fled the officer.  The officer and a second officer caught the Defendant who then told the officers that they could find the drugs in his pants leg.  The officers retrieved the drugs and placed the Defendant under arrest.  The Defendant filed a motion to suppress the evidence found as a result of the warrantless searches.  The trial court denied this motion.  The Defendant pled guilty to possession of over .5 grams of cocaine, a Class B felony, but reserved a certified question concerning whether the warrantless searches fell within an exception to the warrant requirement. The Defendant now appeals on the basis of the certified question.  We find that the searches fell within an exception to the warrant requirement and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID G. HAYES and THOMAS T. WOODALL, JJ., joined.

Dwight E. Scott, Nashville, Tennessee, for the appellant, Howard Lavelle Tate.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Victor S. Johnson, District Attorney General; and Pamela Anderson, Assistant District Attorney General,  for the appellee, State of Tennessee.

**OPINION**

Factual Background

On October 14, 2001 at 8:15 p.m., Officer Shariff Mallory had just finished a call on Dickerson Road in Nashville, when he saw a van pass in front of him at an intersection near Dickerson Road. The van, driven by the Defendant, was in a residential neighborhood and the volume of the music in the van was so loud that Officer Mallory could hear it from 150 to 200 feet away. Officer Mallory pulled over the Defendant. Officer Mallory told the Defendant he was pulling him over because of the volume of his music and asked for the Defendant's driver's license and registration. Officer Mallory returned to his police car and ran a check of the Defendant's driver's license and discovered that the Defendant had a couple of drug charges, a drug paraphernalia charge and a misdemeanor capias that was no longer outstanding. Officer Mallory then proceeded to give the Defendant a metro citation for violation of a noise ordinance. While Officer Mallory was speaking with the Defendant, the officer noticed that the Defendant was acting very nervous. Officer Mallory asked the Defendant to step out of the van and to the back of the officer's patrol car to sign the citation.

After the Defendant signed the citation, Officer Mallory gave the citation to the Defendant. Officer Mallory then asked the Defendant if he had anything illegal on him, such as a knife or a gun. The Defendant replied that he did not. Officer Mallory then asked for consent to search the Defendant's person. The Defendant said yes. Officer Mallory did a pat down search and found nothing. Officer Mallory then asked for permission to search the Defendant's vehicle. The Defendant replied, "Whatever." Officer Mallory then searched the Defendant's van and found a digital scale with a white powder substance on it. The officer did not have a field test kit and was unable to complete a field test of the white powder. Officer Mallory approached the Defendant with the scales and told the Defendant to turn around. The Defendant turned around and then ran away from the officer. Officer Mallory had been joined by Officer Clare and they proceeded to chase the Defendant until they caught him. After the Defendant actively resisted arrest, the officers sprayed the Defendant with pepper spray. The officers then handcuffed the Defendant and returned him to the patrol car. At that time, the Defendant told the officers that the "dope" was inside his pants leg. The officers then retrieved cocaine from the Defendant's left pants leg and placed the Defendant under arrest.

On June 4, 2002, the Defendant was indicted for evading arrest, resisting arrest, possession of cocaine with intent to sell, and possession of drug paraphernalia with intent to prepare a controlled substance for sale. On November 15, 2002, the Defendant filed a motion to suppress the digital scales and the cocaine found during the searches of the Defendant's vehicle and person. On January 8, 2003, the trial court filed an order denying the Defendant's motion to suppress.

Three of the Defendant's charges were dismissed, and he pled guilty to possession over .5 grams of cocaine, a Class B Felony. The Defendant did reserve an agreed-upon certified question of law upon which to appeal.

The certified question agreed upon by the trial court and the parties is: Did the court error [sic] in denying the Defendant's request to suppress the fruits of the search of his vehicle and person by a police officer on October 14, 2001. The Defendant alleged that the searches were conducted without benefit of a search warrant and could not be sustained under any of the exceptions to the warrant requirement. Without the evidence seized during the searches, the State could not have continued the Defendant's prosecution.

## STANDARD OF REVIEW

Our standard of review for a trial court's findings of fact and conclusions of law on a motion to suppress evidence is set forth in State v. Odom, 928 S.W.2d 18 (Tenn. 1996). Under this standard, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." Id. at 23. As is customary, "the prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" State v. Carter, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting State v. Keith, 978 S.W.2d 861, 864 (Tenn. 1998)). Nevertheless, this Court reviews de novo the trial court's application of the law to the facts, without according any presumption of correctness to those conclusions. See State v. Crutcher, 989 S.W.2d 295, 299 (Tenn. 1999).

## ANALYSIS

The Defendant argues two issues in his brief. He first argues that the State failed to carry its burden at the suppression hearing that the Defendant had violated an ordinance and that the search was incident to a valid arrest. The Defendant also argues that the stop of the Defendant exceeded the scope of its initial purpose, and the further detention of the Defendant ripened into an illegal arrest. The Defendant's appeal is based solely on a certified question of law. When an appeal is brought by certified question of law, no issue beyond the scope of the certified question may be considered by this Court. State v. Pendergrass, 759 S.W.2d 647, 650 (Tenn. 1988). Therefore, the only question we may address is whether the warrantless searches of both the Defendant and his vehicle can be sustained under any exception to the warrant requirement.

The trial court made the following findings of fact:

Officer Mallory testified that he was finishing a call on Dickerson Road at approximately 8:15 p.m. when he observed a van pass by with loud music in a residential neighborhood. When he pulled over the defendant's vehicle, Officer Mallory noticed that the defendant seemed nervous. The officer prepared a metro citation for violation of a noise ordinance and asked the defendant to step to the back of his vehicle to sign the citation. After the defendant signed the citation, Officer Mallory asked the defendant if he was holding anything illegal on his person. Subsequently, Officer Mallory asked for consent to search the defendant's person and the defendant acquiesed. The initial search of the defendant's person did not reveal any contraband, and Officer Mallory proceeded to seek consent from the defendant

to search his vehicle. The defendant consented to the search of his vehicle, and Officer Mallory testified this search revealed digital scales containing a white powder residue. When Officer Mallory confronted the defendant with the scales and attempted to grab the defendant's hand he immediately gave chase. Officer Mallory apprehended the defendant a few blocks later and the defendant told Officer Mallory that he had contraband in his pant leg. The Officer retrieved the cocaine and placed the defendant under arrest.

. . . .

The defendant argues that he never consented to the officer's search of his person or vehicle. Specifically, the defendant testified that he responded "whatever" when Officer Mallory requested consent to search the defendant's person and vehicle. The proof indicated that the defendant replied "whatever" to each request to search his person and vehicle. When evidence is seized as the result of a warrantless search of a vehicle, the state must establish that the search was conducted pursuant to one of the exceptions to the warrant requirement. State v. Keith, 978 S.W.2d 861 (Tenn. 1998). One such exception is a search conducted pursuant to an individual's consent. Schneckloth v. Bustamonte, 412 U.S. 218 (1973). The scope of consent is not based on the subjective intentions of the consenting party or the subjective interpretations of the searching officer. Instead the standard is that of objectionable [sic] reasonableness-what would a typical reasonable person have understood by the exchange between the officer and the suspect. Florida v. Jimeno, 500 U.S. at 251 (1991). See also State v. Troxell, 78 S.W.3d 866 (2002). If the defendant did not want to consent to the search, any reasonable person would have answered "no". [sic] Applying a common sense interpretation to the verbal exchange, the Court is of the opinion that the defendant's response to the officer's request for consent was adequate to provide the requisite consent for the search.

. . . .

The defendant's final contention is that [the] second search of the defendant's person was conducted without the authority of a warrant, and it was not conducted pursuant to any of the search warrant exceptions. When the defendant fled from the officers and was captured a few blocks away, Officer Mallory conducted a second search of the defendant's person. Notwithstanding the officer's ability to conduct a search incident to arrest, the defendant volunteered the statement to the officer that the "dope was in his pant leg." Thus, Officer Mallory was proper in retrieving this contraband from the defendant's clothing and placing him under arrest. The Court is of the opinion the issue regarding the second search of the defendant's person is devoid of merit.

The Fourth Amendment to the United States Constitution and Article I, Section 7 of the Tennessee Constitution protect individuals from unreasonable searches and seizures by law enforcement officers. A search conducted without a warrant is presumptively unreasonable and at a suppression hearing regarding such a search the State bears the burden of proving that the warrantless search was reasonable. State v. Coulter, 67 S.W.3d 3, 41 (Tenn. Crim. App. 2001). This means that the State must prove that the warrantless search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement. State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000). One exception to the warrant requirement for a valid search is that an individual gives consent to the warrantless search. Schneckloth v. Bustamonte, 412 U.S. 218, 248 (1973). The consent must however, be "'unequivocal, specific, intelligently given and uncontaminated by duress or coercion.'" State v. Brown, 836 S.W.2d 530, 547 (Tenn. 1992). The standard is "'that of 'objective' reasonableness – what would the typical reasonable person have understood by the exchange between the officer and the suspect.'" State v. Troxell, 78 S.W.3d 866, 872 (Tenn. 2002) (quoting Florida v. Jimeno, 500 U.S. 248, 251 (1991)).

As stated above, our standard of review requires that the evidence preponderates against the trial court's findings of fact in this case. When applying an objective reasonableness standard to the exchange between Officer Mallory and the Defendant, it is clear that the Defendant consented to the searches.

The Defendant replied "whatever" to the officer's request for consent to search both the Defendant's person and the Defendant's vehicle. As the trial court stated, a reasonable person would have expected the Defendant to unequivocally state his opposition to a search. The Defendant's reply of "whatever" would lead a reasonable person to conclude that the Defendant had no objection to the searches. The trial court's application of the law to this factual scenario is correct.

The second search of the Defendant's person clearly was conducted pursuant to consent by the Defendant. The officers caught the Defendant, and he told the officers where they could find the cocaine on his person. The Defendant volunteered this information. Clearly this is consent to a search. This evidence does not preponderate against the trial court's findings of fact, and the trial court correctly applied the law to these facts.

## CONCLUSION

Because we conclude that the evidence does not preponderate against the trial court's findings of fact and conclusions of law, we affirm the trial court's denial of the Defendant's motion to suppress, and accordingly, the judgment of conviction.

_____
JERRY L. SMITH, JUDGE

-5-