# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### November 4, 2014 Session

## STATE OF TENNESSEE v. ANDREW BARRY DIEBOLD

**Appeal from the Circuit Court for Haywood County**
**No. 6962      Clayburn Peeples, Judge**

---

**No. W2014-00466-CCA-R3-CD  - Filed December 30, 2014**

---

The defendant, Andrew Barry Diebold, entered pleas of guilty to possession of marijuana with the intent to manufacture, deliver, or sell and possession of drug paraphernalia.  He was sentenced, respectively, to two years as a standard offender, to serve ninety days, with one year and nine months of unsupervised probation, and to ninety days at 75%.  As a condition of his pleas, he reserved as a certified question if the warrantless search of his backpack by a law enforcement officer was illegal.  The search was made by the defendant's father, who was a lieutenant with the Brownsville Police Department, as the backpack was in the passenger side of the father's truck, which the defendant had been operating.  We conclude that the certified question is not dispositive of the case and, therefore, dismiss the appeal.

### Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed

ALAN E. GLENN, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and ROBERT L. HOLLOWAY, JR., J., joined.

David Camp, Jackson, Tennessee, for the appellant, Andrew Barry Diebold.

Robert E. Cooper, Jr., Attorney General and Reporter; Caitlin E.D. Smith, Assistant Attorney General; and James G. (Jerry) Woodall, District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

To place the legal issues in this matter in perspective, we first will set out the testimony at an evidentiary hearing on a motion to suppress which earlier had been filed.

The only witness at the hearing was Lieutenant Barry Diebold, employed by the Brownsville Police Department and the father of the defendant. He stated that, at the time of the incident, the defendant was living with him, his wife, and their youngest son and was "there every night." Lieutenant Diebold loaned a truck he was not using to the defendant, whose own vehicle had been involved in an accident. He said that both he and the defendant had keys for the truck. On the day in question, Lieutenant Diebold had been on duty and returned to his residence around lunchtime, finding that his truck, being operated by the defendant, was parked in front of the mailbox on the street. Lieutenant Diebold "moved the truck because [he] knew [they would] have a mail delivery. That's the only reason [he] moved the truck." He said that the truck had only a single seat, and his son's backpack, which he recognized, was on the passenger side, either on the floor or the seat. Inside the truck there was a "different odor," not "something that [he] had smelled before." He was familiar with the odor of marijuana, but this was not "the standard marijuana smell." Asked if, at the time, he was acting as a law enforcement officer or as a father, he responded, "I'm both."

While in the truck, Lieutenant Diebold found inside the defendant's backpack two containers which later were determined to contain 88 grams of marijuana. After he moved the truck, Lieutenant Diebold took the backpack and its contents to the Brownsville Police Department where either he or Corporal Black discovered that it also contained a set of scales. Lieutenant Diebold then returned to his home and, as both a father and a police officer, talked with the defendant, who was not in custody, about the matter. The defendant said that he did not sell marijuana and that "[i]t was for some friends or something."

During cross-examination, Lieutenant Diebold testified that his son had been operating the truck for about two months and was responsible for putting gasoline into it. He said that when he arrived at his home at lunchtime he still was on duty and the defendant was still asleep. He did not advise the defendant of his Miranda rights before speaking with him about the contents of the backpack.

Earlier, the defendant had filed a motion to suppress evidence from the "warrantless search" of the defendant's property on June 29, 2012, violating his rights because there was no probable cause for the search. As relief, he "request[ed] that all evidence seized or statements made as a result of the illegal search and arrest of the defendant be suppressed, and the case against the defendant be dismissed." Neither the motion to suppress nor supporting memorandum makes specific mention of the second search at the Brownsville Police Department when the scales were found, resulting in a separate charge, nor of the statement by the defendant to his father at their residence, in which the defendant

-2-

acknowledged knowing of the marijuana, but claimed it belonged to a friend.[1]  Apparently, the State filed a response to the motion, but that response is not in the record on appeal. However, its rationale was described as being that Lieutenant Diebold, as owner of the vehicle, had a right to search his own property.

A two-count indictment was returned against the defendant, the first alleging possession of marijuana with intent to manufacture, deliver, or sell and the second, possession of drug paraphernalia.

## ANALYSIS

At the conclusion of the evidentiary hearing, based upon Lieutenant Diebold's ownership of the truck and relationship to the defendant, the trial court denied the motion to suppress:

> The question is, does a father/homeowner have a right to do that, and, [defense counsel], unless you can tell me that you've got some authority to say that he doesn't, I'm going to have to say that he does, and I understand that he's a police officer, too.

Following the hearing, the trial court entered an order stating that "upon presentation of a motion to suppress, appearance of counsel, testimony of the witnesses and the entire record in this cause it would appear unto this Honorable Court that the Motion to Suppress is not well taken and is therefore denied."

The defendant then entered pleas of guilty to possession of marijuana with the intent to manufacture, deliver, or sell and possession of drug paraphernalia.

The certified question was phrased as follows:

> Did the trial court err when it denied the defendant's motion to suppress when the alleged scheduled [sic] VI contraband and drug paraphernalia was [sic] discovered by a law enforcement officer conducting a warrantless search of a closed backpack owned by the defendant.

Rule 37(b)(2) of the Tennessee Rules of Criminal Procedure provides that an appeal lies from any judgment of conviction upon a plea of guilty or nolo contendere if:

---

[1]The motion does seek, in general terms, to "suppress statements made as a result of the illegal search and arrest" of the defendant.

(A) [T]he defendant entered into a plea agreement under Rule 11(a)(3) but explicitly reserved--with the consent of the state and of the court--the right to appeal a certified question of law that is dispositive of the case, and the following requirements are met:

(i) the judgment of conviction or other document to which such judgment refers that is filed before the notice of appeal, contains a statement of the certified question of law that the defendant reserved for appellate review;

(ii) the question of law is stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved;

(iii) the judgment or document reflects that the certified question was expressly reserved with the consent of the state and the trial court; and

(iv) the judgment or document reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case[.]

Tenn. R. Crim. P. 37(b)(2)(A). In State v. Preston, 759 S.W.2d 647 (Tenn. 1988), our supreme court emphasized that the burden is on the defendant to ensure that the conditions for properly preserving a question of law pursuant to Rule 37 have been met:

This is an appropriate time for this Court to make explicit to the bench and bar exactly what the appellate courts will hereafter require as prerequisites to the consideration of the merits of a question of law certified pursuant to Tenn. R. Crim. P. 37(b)(2)(i) or (iv). Regardless of what has appeared in prior petitions, orders, colloquy in open court or otherwise, the final order or judgment from which the time begins to run to pursue a T.R.A.P. 3 appeal must contain a statement of the dispositive certified question of law reserved by defendant for appellate review and the question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved. For example, where questions of law involve the validity of searches and the admissibility of statements and confessions, etc., the reasons relied upon by defendant in the trial court at the suppression hearing must be identified in the statement of the certified question of law and review by the appellate courts will be limited to those passed upon by the trial judge and stated in the certified question, absent a constitutional requirement otherwise. . . . No issue beyond the scope of the certified question will be considered.

-4-

Id. at 650.

As we will explain, we conclude that the certified question is too general and vague for this court to consider the defendant's appeal.

Both the motion to suppress and the certified question refer, in the singular, to a "search," while the testimony at the evidentiary hearing revealed that Lieutenant Diebold opened his son's backpack in the truck, when the marijuana was found, and a second opening of the pack at the Brownsville Police Department, where the scales were found, resulting in the separate paraphernalia charge. Thus, although the defendant questions "the search," first in our review would be which search the defendant sought to suppress or whether the two searches could be considered as one. Such a review would require extensive and far-reaching research of the laws of search and seizure, as would then also be necessary regarding the defendant's subsequent admission to Lieutenant Diebold regarding the items. We note that the trial court was not asked to, and did not, review the searches individually or consider whether the defendant's statement was lawfully obtained.

Thus, based upon the facts of the entire episode, it is clear that there are different issues as to each "search" as well as to the defendant's statement to his father. In view of this, we conclude that the certified question is both too broad and vague to be dispositive. Accordingly, we conclude that we do not have jurisdiction of the matter and dismiss the appeal.

## CONCLUSION

Based upon the foregoing authorities and reasoning, the appeal is dismissed.


_____
ALAN E. GLENN, JUDGE

-5-